**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DONY A. CISNEROS,

       Petitioner,

v.                                     Case No. 8:13-cv-449-T-36JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

       Petitioner Dony A. Cisneros, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2004.  In the response (Dkt. 9), Respondent raises no challenge to the timeliness of the petition.  Cisneros filed a reply (Dkt. 14).  Upon review, Cisneros's petition must be denied.

### PROCEDURAL HISTORY

       A jury convicted Cisneros of burglary of a dwelling with assault or battery or with a dangerous weapon (count one), sexual battery (with deadly weapon) (count two), and burglary of a dwelling with assault or with a dangerous weapon used (count three).  (Dkt. 11, Ex. 1, Vol. I, pp. 88-89.)   Cisneros was sentenced to consecutive terms of life imprisonment on all counts.  (Dkt. 11, Ex. 1, Vol. V, p. 618.)  The state appellate court *per curiam* affirmed the judgments and sentences.  (Dkt. 11, Ex. 4.)

Cisneros filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, an addendum to the motion, amended versions of two claims, and a supplement to the motion.  (Dkt. 11, Ex. 5, Vol. I, pp. 15-142, 155-70; Ex. 5, Vol. V, pp. 695-704.)  The state court summarily denied or dismissed all of his claims except ground seventeen, on which it conducted an evidentiary hearing. (Dkt. 11, Exs. 6-9.)  Following the hearing, the state court entered an order denying ground seventeen.  (Dkt. 11, Ex. 10.)  Cisneros filed a motion for rehearing, which the state court dismissed.  (Dkt. 11, Ex. 5, Vol. V, pp. 778-802.)  The state appellate court *per curiam* affirmed the rejection of Cisneros's postconviction claims.  (Dkt. 11, Ex. 14.)  It also denied Cisneros's motion for rehearing and issuance of a written opinion.  (Dkt. 11, Exs. 15, 16.)

## FACTS[1]

At about 1:30 a.m. on December 21, 2002, Martha Delgado returned to her apartment complex in Tampa and noticed a white Subaru station wagon pull up near her car after she parked.  After entering her apartment, Delgado turned and saw a man with a knife at her door.  He signaled to her to be quiet and placed his foot between the door and the door frame.

When Delgado screamed, her husband Miguel Alicea, who was inside the apartment, jumped up out of bed.  The man with the knife ran to the white Subaru and drove away.  Alicea called 911.  Cisneros was pulled over a short time later, driving a white Subaru.  Upon arriving at the location where police had detained Cisneros, Delgado and Alicea identified him.  A knife was recovered from the car's glove box.

---

[1] This factual summary is derived from the motion to suppress hearing transcript, the trial transcript, and the briefs filed on direct appeal.

When Cisneros was arrested for this offense, Detective Michael Marino of the Hillsborough County Sheriff's Office obtained a sample of Cisneros's saliva to see if his DNA matched evidence in three unsolved sexual battery cases. The sample did not match the three Sheriff's Office cases. However, it did match evidence collected in another unsolved sexual battery case about which Marino was unaware because it was handled by the Tampa Police Department.

This unsolved case involved events occurring several months earlier. Specifically, during the early morning hours of September 8, 2002, I.M.I. arrived at her mother's apartment in Tampa. She went inside, closed the door behind her, and started to put her belongings down. The door opened, and a man asked if "Chris" was there. I.M.I. told him he had the wrong apartment. The man produced a metal pipe or tool, threatened I.M.I., and told her not to scream. He committed sexual battery on I.M.I.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . ") (citations omitted).

In *per curiam* decisions without written opinions, the state appellate court affirmed both Cisneros's judgments and sentences, as well as the rejection of Cisneros's postconviction motion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.

Cisneros bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## EXHAUSTION OF STATE COURT REMEDIES; PROCEDURAL BAR

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion.  28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Fruit v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364,

365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).  A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with

error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152, 167-70 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## DISCUSSION

### Grounds One and Two: Trial Court Error

**Ground One**

The Fourth Amendment prohibits searches conducted without a warrant issued for probable cause. "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (citations omitted). One exception is a search undertaken pursuant to consent. *Id.* Consent must be voluntarily given; "[v]oluntariness is a question of fact to be determined from all the circumstances." *Id.* at

248-49.  Prior to trial, Cisneros filed a motion to suppress his "saliva, DNA, and identity." (Dkt. 11, Ex. 1, Vol. I, pp. 27-34.)  He argued that the search and seizure through which his DNA was acquired violated the Fourth Amendment because, pursuant to *Schneckloth*, he did not voluntarily consent to giving the saliva sample.

The trial court conducted an evidentiary hearing on this motion.  At the hearing, Marino and Corporal Carlos Collado of the Hillsborough County Sheriff's Office testified about the questioning of Cisneros upon his arrest.  Collado testified that he spoke to Cisneros in Spanish and translated what Marino said.  Collado and Marino both testified that they explained Marino was investigating other sexual battery cases.  (Dkt. 11, Ex. 1, Vol. I, pp. 107, 134.)  They further testified that Cisneros was told Marino was asking for a DNA sample to compare to the unsolved cases, and that Cisneros agreed to provide the sample.  (*Id.*, pp. 106-11, 135-36.)  Collado also testified that Cisneros executed a consent form.  (*Id,* p. 136.)   Collado testified that the form was a multi-use form, and that even though it specifically referred to consent to search property, Cisneros understood he was providing DNA for purposes of the sexual battery investigations.  (*Id.*, pp. 136, 138, 140-41.)  Cisneros testified that the officers did not tell him they were investigating him for any sexual battery cases and never explained why the DNA was needed.  (*Id.*, pp. 142, 143.)  He testified that the officers told him "they have to do it," and he did not understand he could have refused.  (*Id.*, p. 142.)  At the conclusion of the hearing, the trial court denied the motion.  Cisneros argued on direct appeal that the denial of his motion was error.

In Ground One of the federal habeas petition, Cisneros asserts that the trial court erred in denying his motion to suppress evidence because the officers did not obtain his voluntary consent to swab his mouth.  He argues that consent was not voluntary because

police failed to inform him that he was a suspect in an unrelated case with respect to which his DNA would be tested.  Cisneros's claim is interpreted as raising the Fourth Amendment claim presented in his state court motion to suppress.

Review of this claim in federal habeas proceedings is barred.  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted).  "[I]f state procedures afford the defendant in a criminal case the opportunity to litigate whether evidence obtained in violation of the fourth amendment should be excluded, and if that opportunity to litigate fourth amendment issues is 'full and fair' . . . then Stone v. Powell precludes federal habeas corpus consideration of those issues whether or not the defendant avails himself of that opportunity."  *Caver v. Alabama*, 577 F.2d 1188, 1193 (5th Cir. 1978).  "[F]ull and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court."  *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) (quoting *Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990)).

To apply the *Stone* bar, the state court must issue findings of fact:

> A state does not afford a defendant a full and fair opportunity to litigate the validity of a search under the Fourth Amendment when the state courts fail to make essential findings of fact. In *Tukes v. Dugger*, we addressed whether *Stone* foreclosed review of the validity of a search when the defendant presented his argument but the state courts failed to make findings of fact to resolve that argument. 911 F.2d 508, 513-14 (11th Cir. 1990). We concluded that the state courts had failed to afford the defendant a full and fair opportunity to litigate the validity of the search when they did not make findings of fact about whether the defendant had invoked his right to counsel or was in custody when he consented to the search of his home. We stated, "The trial court's failure to make explicit findings on matters essential to the

> fourth amendment issue, combined with the fact that the state appellate court issued only a summary affirmance, precludes a conclusion in this case that the state provided the meaningful appellate review necessary to erect a *Stone v. Powell* bar to our review of the claim." *Id.* at 514.

*Hearn v. Florida*, 326 Fed. App'x 519, 522 (11th Cir. 2009).  The state court made findings on matters essential to the Fourth Amendment issue.[2]  Cisneros was provided the opportunity for a full and fair litigation of his Fourth Amendment claim before the state trial and appellate courts.  *Stone* therefore precludes federal habeas review of his Fourth Amendment claim.

To the extent that Cisneros attempts to raise an independent due process claim based upon the state court's alleged deficiencies in reviewing his motion to suppress,[3] he cannot obtain relief.  He fails to raise a federal claim.  A petitioner can only obtain federal habeas relief if he is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  Accordingly, a claim that raises no federal constitutional issue is not cognizable in a federal habeas petition.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  Moreover, even assuming his due process argument could be construed as a federal claim, it would be unexhausted because Cisneros raised no such claim on

---

[2] The state court concluded:

[T]here is no question the use of this form clouded what was going on here. . . . It doesn't address DNA but I have testimony from both these officers that not only did he sign the form which is meaningless to the issue in the case, but they explained to him why they wanted his DNA, why they wanted him to swab his mouth and he agreed and did it.  I have a swearing contest.  The form is unfortunate.  It clouds the issue.  But it doesn't cloud it to the point that I can find he didn't knowingly, voluntarily give the swab of the DNA out of his mouth after being explained - - after it being explained to him why they wanted to do that.

(Dkt. 11, Ex. 1, Supp. II, p. 174.)  The court further stated that "[t]he fact that [Cisneros] knowingly and consensually [sic] gave DNA" did not prevent any subsequent testing of the DNA.  (*Id.*, p. 178.)

[3] In support, Cisneros points to the trial court's statement that it had not read his motion "that carefully."  (Dkt. 11, Ex. 1, Supp. II, p. 174.)

direct appeal when he challenged the trial court's rejection of his motion to suppress. (Dkt. 1, Ex. 2, pp. 42-49.) Cisneros cannot return to state court to file a successive, untimely direct appeal. *See* Fla. R. App. P. 9.140.  This results in a procedural default of any federal due process claim. *See Smith*, 256 F.3d at 1138.   Cisneros does not establish the applicability of an exception to overcome the default. *See id.*  Accordingly, Ground One warrants no relief.

**Ground Two**

Cisneros claims that the state court erred in granting the State's request to use *Williams* rule evidence[4] during trial.  The State filed two separate cases against Cisneros. The State filed in the I.M.I. case a notice of intent to introduce *Williams* rule evidence by presenting facts from the Delgado case.  (Dkt. 11, Ex. 1, Supp. I, pp. 149-51.)  The trial court denied Cisneros's motion in limine to exclude the *Williams* rule evidence.  (Dkt. 11, Ex. 1, Vol. I, pp. 42-43.)  Following this ruling, counsel moved to consolidate the two cases for trial.[5]

Cisneros asserts that the trial court erred in permitting *Williams* rule evidence because it incorrectly applied the test for admissibility of such evidence under Florida law. This claim is not cognizable in Cisneros's federal habeas petition, as it raises only a state

---

[4] *Williams* rule evidence is evidence of collateral crimes or acts that are factually similar to the charged offense.  *See Williams v. State*, 110 So.2d 654 (Fla. 1959). Section 90.404(2)(a), Fla. Stat. provides:

> Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

[5] The counts regarding I.M.I. were identified as counts one and two, and the count concerning Delgado was identified as count three.

law issue for which federal jurisdiction does not lie.  *See Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); *Branan*, 861 F.2d at 1508.

In his reply, Cisneros appears to argue that the state court's ruling violated his Sixth Amendment right to a fair trial.  However, he is prohibited from raising new claims in the reply.  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (arguments raised for the first time in a reply brief are not properly before a reviewing court). Additionally, any such claim would be unexhausted because Cisneros did not raise a federal issue on direct appeal when he argued trial court error in allowing the *Williams* rule evidence.  (Dkt. 11, Ex. 2, pp. 26-38.) A review of Cisneros's appellate brief shows that he relied exclusively on state law, and that neither his argument nor the authority cited in support fairly presented to the state appellate court a federal claim with regard to the state court's decision on *Williams* rule evidence.  (*Id.*)

Cisneros's failure to raise the constitutional dimension of his claim renders it unexhausted.  *See Picard*, 404 U.S. at 275-76.  Cisneros cannot return to state court to file an untimely, successive direct appeal.  *See* Fla. R. App. P. 9.140.  Thus, any federal claim would be procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Cisneros does not establish the applicability of either exception to overcome the default.  *See id.*  Accordingly, Ground Two is barred from federal habeas review.

**Grounds Three Through Seven: Ineffective Assistance of Trial Counsel**

Grounds Three through Seven allege ineffective assistance of trial counsel.  Claims of ineffective assistance of counsel are analyzed under *Strickland v. Washington*, 466 U.S.

668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.  Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.  However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Cisneros must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.  A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Ground Four**

Cisneros claims counsel was ineffective for failing to argue in the motion to suppress

that evidence should be excluded because he was provided insufficient warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) when he was arrested following the Delgado burglary. He claims that police failed to inform him that he had the right to consult with an attorney before questioning.

In ground ten of his postconviction motion, Cisneros asserted that the *Miranda* warnings did not adequately inform him he had the right to counsel "before and during" questioning. (Dkt. 11, Ex. 5, Vol. I, pp. 99-100.) The state court began its analysis of ground ten by identifying Cisneros's broad claim that counsel was ineffective for not arguing that *Miranda* warnings were insufficient. (Dkt. 11, Ex. 8, p. 683.) It then specified his claim that "counsel failed to argue that the *Miranda* warning was insufficient in that it did not advise the Defendant that he had a right to counsel during questioning. Defendant contends that had counsel raised the issue of the defective *Miranda* warning, counsel could have shown that Defendant was not aware he was entitled to counsel prior to submitting the DNA swab. . ." (*Id.*) The state court analyzed the portion of Cisneros's claim concerning the alleged lack of warning of the right to counsel during questioning. (*Id.*, pp. 683-84.) The state court concluded its discussion by stating that Cisneros failed to show that counsel was ineffective for not asserting that the warning was insufficient. (*Id.*, p. 684.)

The state court did not expressly analyze the portion of Cisneros's claim alleging that counsel was ineffective for failing to argue he was not informed of the right to counsel *before* questioning. However, the state court is presumed to have rejected Cisneros's claim on the merits. *See Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Furthermore, the state court identified and denied Cisneros's broad overall claim, as well as his allegation that he was not aware of his right to counsel before submitting the DNA sample.

The record supports the determination that counsel was not ineffective for failing to argue that the *Miranda* warnings given to Cisneros were insufficient to inform him of his right to an attorney before questioning. *Miranda* requires that, prior to questioning, a suspect be informed:

> [T]hat he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

384 U.S. at 479. "The need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Id.* at 470.

Cisneros states that the rights advisement form he signed is written in Spanish. However, in ground ten of his postconviction motion, he references "Exhibit A." (Dkt. 11, Ex. 5, Vol. I, p. 100.) "Exhibit A" contains a handwritten English translation of the form, upon which Cisneros relied in presenting his claim to the state courts. This translation provides in relevant part, "3) I have the right to have a lawyer present in this interrogatory; 4) If I can't pay the services of a lawyer, one will be as[s]igned without cost before being interrogated, if I want to." (*Id.*, p. 24.)

Collado testified at the motion to suppress hearing and at trial that he provided *Miranda* warnings to Cisneros in Spanish. (Dkt. 11, Ex. 1, Vol. I, p. 134; Vol. III, p. 280.)

At trial, Collado described that the *Miranda* warnings given to all suspects include the warning that if they cannot afford an attorney, an attorney will be appointed "before any questioning."  (Dkt. 11, Ex. 1, Vol. III, p. 281.)   Collado also testified that he provided Cisneros these warnings at the scene of arrest and again when the interview began.  (*Id.*, p. 282.)

Given the translation he has presented to reflect his understanding of the form's contents, as well as Collado's testimony, Cisneros does not establish that the warnings provided were insufficient to inform him of the right to counsel prior to questioning as required by *Miranda*.  As Cisneros does not demonstrate that he was inadequately warned under *Miranda*, he fails to establish that counsel had any basis to object for the reasons alleged, or that there is a reasonable probability that making such an objection would have changed the outcome of the proceedings.   Thus, he does not meet either prong of *Strickland.*   He does not show that the state court's decision was an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts.  Cisneros is not entitled to relief on Ground Four.[6]

**Grounds Three and Seven**

In Ground Three, Cisneros asserts that trial counsel was ineffective for failing to properly argue the motion for judgment of acquittal with respect to count two, sexual battery.   He claims that counsel was ineffective for not arguing 1) the evidence was

---

[6] Cisneros states that his ineffective assistance of counsel claim pertains to an insufficient warning of the right to an attorney before questioning.  To the extent he might nevertheless argue that counsel should have argued the warnings were deficient because he was not warned of the right to counsel during questioning, he is not entitled to relief. The state court's rejection of this aspect of his claim (Dkt. 11, Ex. 8, pp. 683-84) is not an unreasonable application of *Strickland* and is not based on an unreasonable determination of the facts.

insufficient to convict him of sexual battery with physical force likely to cause serious personal injury, 2) there was no evidence that the object was a deadly weapon, and 3) there was no evidence he committed sexual battery while using or threatening to use a knife, as specifically alleged in the information.  Ground Seven repeats this third allegation, which Cisneros also presented as ground seventeen of his postconviction motion.

Respondent contends that the claims raised in Grounds Three and Seven are exhausted only to the extent alleged in ground seventeen of the postconviction motion. Cisneros concedes in his reply that Ground Three is unexhausted to the extent not raised in ground seventeen of the postconviction motion; therefore, he abandoned Ground Three in the reply.  (Dkt. 14, p. 14.)  Accordingly, with respect to Grounds Three and Seven, this Court reviews the claim that was also raised in ground seventeen of the postconviction motion.[7]

I.M.I. testified that her assailant had a weapon that was like a tool or pipe.  It was Delgado who testified that her assailant carried a knife.  However, the State alleged in the charging document that Cisneros used or threatened to use a knife during the sexual

---

[7] In support of his claim in Ground Seven, Cisneros asserts that counsel's closing argument regarding the deadly weapon was confusing and misleading.  Cisneros did not present this assertion to the state postconviction court in ground seventeen.  (Dkt. 11, Ex. 5, Vol. I, pp. 139-40.)  When a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts for the same claim in his federal habeas petition, he fails to fairly present the federal claim to the state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994). Cisneros cannot return to state court to file an untimely, successive postconviction motion.  *See* Fla. R. Crim. P. 3.850(b), (h). This results in a procedural default of this aspect of Ground Seven.  *See Smith*, 256 F.3d at 1138.  Cisneros does not establish the applicability of either exception to overcome the default.  If this assertion is alternatively construed as an independent claim of ineffective assistance of counsel, it also is procedurally defaulted due to Cisneros's failure to raise it in his postconviction motion, and Cisneros fails to overcome the default. Notwithstanding the default, Cisneros does not establish entitlement to relief.  Cisneros's argument is vague and unclear; the record reflects that in his closing argument, counsel argued to the jury that they must consider carefully the definition of a deadly weapon.  (Dkt. 11, Ex. 1, Vol. V, pp. 532-34.)  Cisneros fails to establish deficient performance of counsel or resulting prejudice.

battery of I.M.I.  Specifically, the superseding information alleges:

> DONY A CISNEROS, on or about the 8th day of September, 2002, . . . did unlawfully and feloniously commit sexual battery upon I.M.I., . . . and in the process thereof used or threatened to use a deadly weapon, to wit: a knife . . .

(Dkt. 11, Ex. 5, Vol. II, p. 192.)  The "dummy" information that the State prepared for the jury contained the same reference to a knife.  (*Id.,* p. 188.)  Counsel did not move for a judgment of acquittal on count two, stating that he did not believe he could do so in good faith.  (Dkt. 11, Ex. 1, Vol. IV, p. 346.)

The state court conducted an evidentiary hearing on Cisneros's claim of ineffective assistance of trial counsel.  At the hearing, counsel conceded that the actual information and the "dummy" information contained this error.  (Dkt. 11, Ex. 5, Vol. V, pp. 730-33.) Counsel testified that he did not move for a judgment of acquittal because the court would have been bound to allow the State to amend the information.  (Id., pp. 736-40.)  The state court denied this claim after the evidentiary hearing:

> After reviewing the allegations, the testimony, evidence, and arguments presented at the February 3, 2011, evidentiary hearing, the court file, and the record, the Court finds [counsel's] testimony to be more credible than that of Defendant.  Therefore, the Court finds the April 21, 2004 superceding information charged Defendant on count two with sexual battery (deadly weapon or force likely to cause injury), a violation of section 794.011(3), Florida Statutes.  The Court finds after the two cases were consolidated, the dummy information was created. The Court finds count two on the dummy information reflected a knife as the deadly weapon, when it should have been a tool or wrench.  The Court finds "a defendant's due process and double jeopardy rights necessarily place limits upon the State's ability to amend an information.  Particularly after the jury has been sworn and the trial has commen[c]ed, the State's ability to amend an information is not unfettered." *State v. Clements*, 903 So.2d 919, 921 (Fla. 2005).
> However, the Court finds "it is well-settled that the state may amend its information during trial, either as to substantive or non-substantive matters, unless the defendant is prejudiced thereby." *Rivera v. State*, 745 So.2d 343, 345 (Fla. 4th DCA 1999).  The Court finds if [counsel] made the

alleged motion for judgment of acquittal on count two, the State would have requested to amend the dummy information on count two to reflect the wrench or tool as opposed to a knife.  The Court finds the judge would have allowed the State to amend count two because Defendant would not have been prejudiced based on the fact that the correct statutory sections were charged with the weapons enhancement in the April 21, 2004 superceding information, and the verdict form and jury instructions on count two all consistently referenced the correct statutory charge.  The Court further finds the victim's trial testimony and the criminal report affidavit referenced a wrench or tool.  The Court finds that based on [counsel's] testimony, Defendant was not prejudiced in preparing his defense as [counsel] knew all along that it was not a knife in count two, but a wrench or tool. Consequently, the Court finds Defendant cannot demonstrate prejudice. **As such, no relief is warranted upon ground seventeen**.

(Dkt. 11, Ex. 10, pp. 715-16) (court's record citations omitted) (emphasis in original).

Applying Florida law that provides the State may amend the charging document during the trial, the state court found that the information would have been amended during the trial to correct the erroneous reference to a knife had counsel raised it in a motion for judgment of acquittal.  This Court must defer to the state court's determinations regarding the application of state law.  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  *See also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).  Additionally, the record supports the state court's conclusion that it was clear to the parties that the weapon in I.M.'s case was not a knife but was instead some form of a tool.  Accordingly, Cisneros fails to establish that he was prejudiced by counsel's conduct.

Cisneros does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in finding that counsel was not ineffective for failing to move for a judgment of acquittal on count two.  He is not entitled to relief on Ground Three or Ground Seven.

**Grounds Five and Six**

Count one was charged as burglary of a dwelling with assault or battery or with dangerous weapon used.  (Dkt. 11, Ex. 5, Vol. II, p. 191.)  Burglary, a second degree felony, is defined in relevant part as entering a dwelling "with the intent to commit an offense therein." § 810.02(1)(b), Fla. Stat.  When, during the commission of a burglary, the offender makes an assault or battery upon any person, or is or becomes armed within the dwelling with a dangerous weapon, such circumstances enhance burglary to a first degree felony punishable by life imprisonment.  § 810.02(2), Fla. Stat.

With respect to count one, the information alleges that Cisneros:

[D]id unlawfully enter or remain in a certain dwelling . . . with the intent to commit an offense therein and in the course of committing the said burglary . . . CISNEROS did commit a battery upon I.M.I. or was armed with a dangerous weapon, to-wit: a metal pipe or wrench.

(Dkt. 11, Ex. 5, Vol. II, p. 191.)  The jury instruction provided on count one states in relevant part that the State must prove "[a]t the time of entering the dwelling Dony Cisneros had a fully-formed conscious intent to commit the offense of Sexual Battery in that structure." (Dkt. 11, Ex. 1, Vol. I, p. 48.)  The jury was additionally instructed that, if they found Cisneros committed burglary, they must also find whether the burglary was committed under certain aggravating circumstances.  (*Id.*, pp. 48-49.)  These circumstances were the factors that would enhance the burglary to a first degree felony.

In Ground Five, Cisneros raises the claim brought in ground fifteen of his motion for

postconviction relief.  There, he argued that counsel was ineffective for not objecting to the jury instruction on count one.  Cisneros asserts that the charging document did not specifically allege that he entered the dwelling with the intent to commit sexual battery therein and the trial court thus "instructed the jury on the element of sexual battery that was not charged in the information of count one."  (Dkt. 1, p. 17.)  The state court summarily denied Cisneros's claim:

> In ground fifteen of the Addendum, Defendant alleges ineffective assistance of counsel for counsel's failure to object to the jury instruction as to count one.  Specifically, Defendant alleges that the Information charged Defendant with "burglary of a dwelling with assault or *battery* or with dangerous weapon," (emphasis added), but that the jury instruction alleged burglary with *sexual battery*.  (Emphasis added).  Defendant contends that the use of "sexual battery" in the jury instructions rather than "battery" prejudiced the jurors' judgment.  However, the Court notes that Defendant is misreading the Information and the jury instructions.  The Information charges that the Defendant "did unlawfully enter or remain in a certain dwelling [ ] with the intent to commit *an offense* therein," and that the jury instructions specify the "offense" as sexual battery.  The jury instructions merely specify the exact "offense" Defendant intended to commit; the crime charged is still burglary of a dwelling with assault or battery or with a deadly weapon as indicated in the Verdict Form. **Accordingly, Defendant is not entitled to any relief on ground fifteen.**

(Dkt. 11, Ex. 7, p. 183) (court's record citations omitted) (emphasis in original).

Cisneros does not establish entitlement to relief. This claim involves the question of whether the jury instruction properly reflected the charge under Florida law.  The postconviction court concluded that because the charging document alleged Cisneros entered the dwelling with the intent to commit "an offense," the jury instruction simply specified which offense the State alleged he intended to commit.

The state courts have made clear that the jury instruction was properly formulated and an objection raised on the basis asserted by Cisneros would have been denied.  *See*

*Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).   *See also Burgess v. McNeil*, 357 Fed. App'x 206, 212 (11th Cir. 2009) ("If the charging document, jury instructions, and sentence were all correct under Florida law, as the Florida courts have told us they were, Burgess' counsel's performance in failing to the challenge the charging document, the jury instructions, or the state's proof cannot be considered deficient.").

Accordingly, Cisneros fails to demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in concluding that counsel was not ineffective for failing to object to the jury instruction.

In Ground Six, Cisneros alleges ineffective assistance of counsel for failing to move for a judgment of acquittal.  To the extent this claim may be construed as raising the claim presented in ground sixteen of the postconviction motion, it provides no relief.  In ground sixteen, Cisneros argued that counsel should have moved for a judgment of acquittal on ground one because he was convicted of a crime for which he was not charged, as the information did not specify he intended to commit sexual battery within the dwelling.  The state court rejected this claim:

> In ground sixteen of the Addendum, Defendant alleges ineffective assistance of counsel for counsel's failure to move for acquittal as to count one.  Specifically, Defendant alleges that he was found guilty of an offense with which he was not charged.  Defendant makes the same argument in this ground as he did in ground fifteen above - - namely, that the charged crime

was changed with the inclusion of "sexual battery" in the jury instructions. However, the Court again notes that this reasoning is without merit and notes that Defendant was found guilty of "burglary of a dwelling with assault or battery or with a dangerous weapon, as charged." **Accordingly, Defendant is not entitled to any relief on ground sixteen**.

(Dkt. 11, Ex. 7, pp. 183-84) (court's record citation omitted) (emphasis in original).

As the state court noted, the verdict form provides that Cisneros was convicted as charged. (Dkt. 11, Ex. 1, Vol. I, p. 88.) Moreover, in rejecting this claim, the state court referred to ground fifteen of the postconviction motion. There, the state court found that the jury instruction was proper in conjunction with the charging document in that it merely specified the exact offense the State alleged Cisneros intended to commit within the dwelling. This determination is entitled to deference. *See Herring*, 397 F.3d at 1354-55; *Burgess*, 357 Fed. App'x at 212. Cisneros does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim that counsel should have moved for a judgment of acquittal on the basis that he was convicted of a crime for which he was not charged.

In both Grounds Five and Six, Cisneros asserts that counsel should have objected because the state court deprived him of his due process right to a fair trial by constructively amending the charging document when it "intertwined" counts one and two through adding the elements of sexual battery and assault to the jury instruction for count one. However, Cisneros failed to raise this claim in his postconviction motion. When he presented this argument on appeal of the postconviction court's order, the State raised a procedural bar to Cisneros's bringing this claim for the first time on collateral appeal. The State cited *Griffin v. State*, 866 So.2d 1 (Fla. 2003) and *Doyle v. State*, 526 So.2d 909 (Fla. 1988).

(Dkt. 11, Ex. 12, p. 25.)[8]

The state appellate court's affirmance is presumed to rest on the application of the state procedural bar.  See *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.").  Thus, this claim was resolved through application of an independent and adequate state basis.  There is no indication that the procedural rule against raising a claim for the first time on collateral appeal is intertwined with federal law or was applied to Cisneros's case in an arbitrary or unprecedented manner.  *See Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

Cisneros's failure to properly present this claim to the state courts results in a procedural default that prevents review of his claim unless he can establish either the cause and prejudice or fundamental miscarriage of justice exception.  *Harris v. Reed*, 489 U.S. 255, 262 (1989).  Cisneros does not argue or demonstrate that either exception applies to overcome the default.  Accordingly, this claim is barred from review.  Cisneros demonstrates no entitlement to relief on Ground Five or Ground Six.[9]

---

[8] Cisneros concedes in his reply that he "enlarge[d] and/or stretch[ed]" this claim from the argument raised in state court.  (Dkt. 14, p. 20.)

[9] To the extent Cisneros may also assert that counsel should have moved for a judgment of acquittal based upon the alleged constructive amendment of the charging document, that claim is also barred.  As Respondent noted, Cisneros's allegation concerning a judgment of acquittal was only exhausted to the extent raised in ground sixteen of the postconviction motion.  Ground sixteen did not include this assertion.  (Dkt. 11, Ex. 5, Vol. I, pp. 138-39.)  When Cisneros did raise the assertion on collateral appeal, the State cited *Doyle* in raising the same procedural bar to bringing the claim for the first time on appeal.  (Dkt. 11, Ex. 12, p. 28.)  Any claim that counsel was ineffective for not moving for a judgment of acquittal based on improper constructive amendment of the charging document is procedurally defaulted for the same reasons addressed with respect to Cisneros's claim that counsel should have objected to the constructive amendment.  As Cisneros does not establish the applicability of either exception to overcome the default, the claim is barred from federal habeas review.

It is therefore

**ORDERED** that Cisneros's petition (Dkt. 1) is **DENIED**.  The Clerk is directed to close this case and to enter judgment against Cisneros.

It is further **ORDERED** that Cisneros is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.  28 U.S.C. § 2253(c)(1).  A district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Cisneros "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Cisneros has not made this showing.  Finally, because Cisneros is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on March 18, 2016.

Charlene Edwards Honeywell
Charlene Edwards Honeywell
United States District Judge

Copy to:
Dony A. Cisneros
Counsel of Record